USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/7/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES JOHNSON,

Plaintiff,

-against-

ANTHONY J. ANNUCCI, JEFFREY MCCOY, WILLIAM LEE, LUIS FRANCO, E. BURNETT, C.O. B. COREY, and C.O. M. BURZO,

Defendants.

No. 15-cv-3754 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff James Johnson brings this action *pro se* against Defendants Anthony J. Annucci, Jeffrey McCoy, William Lee, Luis Franco, E. Burnett, C.O. B. Corey, and C.O. M. Burzo relating to Plaintiff's alleged deprivation of religious rights resulting from his keeplock confinement.[1] Before the Court is Defendants' motion to dismiss (ECF No. 22). For the following reasons, Defendants' motion to dismiss is GRANTED.

**BACKGROUND**

The following facts are derived from the Complaint (ECF No. 2), Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp.," ECF No. 25), Plaintiff's Declaration in Reply to Defendant's Motion to Dismiss ("Pl.'s Decl.," ECF No. 26), and all relevant materials.[2]

[1] "Keeplock confinement is 'a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates.'" *Saulter v. Hanslmaier*, No. 94-cv-6855, 1997 WL 177887, at *1 (S.D.N.Y. Apr. 14, 1997) (quoting *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir. 1989) (citing N.Y. Comp. Codes R. & Regs. tit. 7, Section 251–1.6 (1988)).

[2] As a *pro se* litigant, Plaintiff is subject to a more liberal pleading standard, which requires the Court to consider factual allegations in Plaintiff's opposition papers to supplement allegations in the Complaint. *See Collins v. Goord*, 438 F. Supp. 2d 399, 403 (S.D.N.Y. 2006). This is in addition to the Court's consideration of "documents attached

On May 5, 2015, Plaintiff, a prisoner at Green Haven Correctional Facility ("Green Haven"),[3] initiated this action against Defendants. Plaintiff alleges Defendants denied him access to religious services in violation of (1) his First Amendment rights and (2) the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA"). (Compl. ¶¶ 4-5, 8.)

On August 6, 2013, an "incident" occurred in corridor F/G. (Compl. ¶ 5.) The inmates found to have been involved in the incident were transported to solitary confinement. (*Id.*) Approximately thirty minutes after the incident occurred, Defendant Corey entered F Block, determined that Plaintiff was in his cell at the time of the incident, and concluded that Plaintiff had not participated in the incident. (*Id.*)

Nevertheless, on August 7, 2013, Plaintiff learned that he had been placed in keeplock confinement because he had been a participant in the August 6 incident. (Pl.'s Decl. ¶ 2(b).) Later that afternoon, Plaintiff received a misbehavior report, signed by Defendants Corey and Burzo, identifying Plaintiff as a participant in the August 6 incident. (Compl. ¶ 6.) The misbehavior report charged Plaintiff with creating a disturbance, refusing a direct order, and a movement violation. (Pl.'s Decl. ¶ 2(c).) Plaintiff was held in keeplock confinement for four days. (*Id.*) During these four days, Plaintiff could not attend the "breaking of the Islamic fast at

to the Complaint as an exhibit or incorporated in it by reference, [] matters of which judicial notice may be taken, or [] documents either in [plaintiff's] possession or of which [plaintiff] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). In addition to the Complaint and Plaintiff's opposition papers, the Court considers the following documents because Plaintiff had knowledge of them and relied on them in bringing suit: Plaintiff's Decision from the IGRC Form 2133 ("Grievance Decision Form") (Lally Decl., Ex. A); Plaintiff's letter to the grievance office dated September 4, 2013 ("Pl.'s Letter") (Pl.'s Decl., Ex. B); the Inmate Grievance Resolution Committee Acknowledgment of Receipt Form ("Grievance Committee Acknowledgment Form") (Lally Decl., Ex. A); the Investigation Report ("Investigative Report") (Lally Decl., Ex. A); and the IGRC Appeal Form ("Appeal Form") (Pl.'s Decl., Ex. B).

[3] Plaintiff is currently incarcerated at Otisville Correctional Facility. (Compl. ¶ 3).

the completion of the month of Ramadan," the "Eid-Ul-Fitr," and "congressional prayer service." (*Id.*)

Plaintiff's receipt of the misbehavior report entitled him to a Tier III hearing.[4] (Pl.'s Decl. ¶ 2(e).) Plaintiff's Tier III hearing took place four days after he received the misbehavior report. (Compl. ¶ 7.) At the Tier III hearing, it was determined that Plaintiff was not a participant in the August 6 incident, and he was released from keeplock. (*Id.*) Though Plaintiff missed the Eid prayer, which he contends is "essential" to Islam, because of the hearing, he requested that he be allowed to attend the Eid meal following the prayer, but his request was denied. (Pl.'s Decl. ¶ 2(f).)

On August 16, 2013, Plaintiff submitted a grievance (the "Grievance") regarding the false misbehavior report by placing the Grievance addressed to the grievance office in Green Haven's mailbox. (Pl.'s Decl. ¶ 2(g); Pl.'s Letter.) After receiving no response for three weeks, Plaintiff wrote a follow-up letter to the grievance office. (*Id.*) Plaintiff claims that "the administration under [Defendants] Lee, Burnett, and Franco refused to file it." (Compl. ¶ 8.) The Grievance was filed on September 16, 2013 and was denied on September 25, 2013. (Grievance Decision.) The grievance office determined that the Grievance was "non-grievable," because "a misbehavior report is a non-grievable item as outlined in Directive #4040." (Grievance Decision.) The Grievance Decision also states that the "grievant had the opportunity to address any issues with the charges at his disciplinary hearing." (*Id.*)

Plaintiff appealed the Grievance Decision to Defendant Lee on September 25, 2013. (Appeal Form; Pl.'s Decl. ¶ 2(h).) Toward the end of October 2013, Plaintiff had not heard back from the Superintendent Office. (Pl.'s Decl. ¶ 2(i).) Plaintiff saw Defendants Lee, Burnett, and

[4] A Tier III hearing is a "formal procedure in the New York prison system for reviewing and adjudicating alleged violations of prison rules." *Soto v. Walker*, 44 F.3d 169, 170 (2d Cir. 1995).

Franco making their monthly walkthrough of the facility area and spoke to Defendant Lee regarding his appeal. (*Id.*) According to Plaintiff, Defendant Lee told Plaintiff that "he should leave well enough alone, because just the fact that Plaintiff beat his last misbehavior ticket, Plaintiff's luck may not be that lucky in his next ticket." (*Id.*) Lee "could make sure that if Plaintiff continue down this road in going after his officer, things could get very difficult for the Plaintiff." (*Id.*)

**STANDARD ON A MOTION TO DISMISS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). A court should accept non conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–cv–6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Even so, "*pro se* plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

### I. Plaintiff Did Not Exhaust His Grievance

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No.

09-cv-9199, 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)) (internal quotation marks and citations omitted).  A plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim."  *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007); *Veloz v. N.Y.*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004).  The defendants bear the burden of demonstrating that the plaintiff's claim is not exhausted.  *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009).  "[A] motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if 'non-exhaustion is clear from the face of the complaint.'"  *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 580 (S.D.N.Y. 2015) (citing *Lovick v. Schriro*, No. 12-cv-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted)).  *See also Lee v. O'Harer*, No. 9:13-cv-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-cv-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

     A person detained or incarcerated at a DOCCS facility must exhaust all of the steps of the DOCC Inmate Grievance Resolution Program ("IGRP").  *See Robinson v. Henschel*, No. 10-cv-6212, 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014) ("the PLRA requires complete exhaustion in accordance with the administrative procedures within [DOCCS]") (internal quotation marks and citations omitted).  The IGRP provides a three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the IGRC, (2) the prisoner

may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the CORC. *See Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009) (citing N.Y. Comp. Codes R. & Regs., tit. 7, § 701.7 (1999)).

Defendants argue that dismissal of Plaintiff's claims for non-exhaustion is appropriate because the Grievance Plaintiff filed makes no reference to missed religious services, specifically the breaking of fast following Ramadan, the "Eid-Ul-Fitr," or a "congressional prayer service." Second Circuit case law is clear that the grievance standard is similar to notice pleading in that a grievance "must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it." *Freedom Holdings, Inc. v.* Spitzer, 357 F.3d 205, 234 (2d Cir. 2004). While a grievance is construed liberally, *Artis v. Velardo*, No. 7:14-cv-0833, 2016 WL 154122, at *3 (S.D.N.Y. Jan. 12, 2016), it must describe the alleged misconduct at issue and give the prison sufficient information to investigate the complaints. *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012); *see also Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *Lovell v. N.Y. State Dep't. of Corrections*, No. 14-cv-3359, 2015 WL 6504045, at *3 (S.D.N.Y. Oct. 27, 2015). However, "the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need to do is object intelligibly to some asserted shortcoming." *Johnson*, 380 F.3d at 697 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). See *also Singh*, 460 F. App'x at 47 (finding non-exhaustion because the plaintiff's grievance against a corrections officer did not include an allegation regarding assault and therefore did not alert officials to a specific claim); *Espinal*, 558 F.3d at 127 (while a *pro se* prisoner is not required to identify the responsible parties, his grievance must "provide a specific description of the problem"); *Ocampo v. Fischer*, No. 11-cv-4583,

2014 WL 7422763, at *13 (E.D.N.Y. Dec. 31, 2014) (quoting 7 N.Y.C.R.R. § 701.5(a)(2)) ("In New York prisons, the inmate's grievance is required to offer a 'concise specific description of the problem and the action requested.'"). Furthermore, Plaintiff's claim and grievance must be predicated on the same injury. *Rentas v. Nason*, No. 09-cv-5528, 2010 WL 3734086, at *1 (S.D.N.Y. Sept. 22, 2010); *see also Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005) ("[T]he mere fact that plaintiff filed *some* grievance, and fully appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance.).

It is clear from the face of the Complaint, and incorporated documents, that the Grievance Plaintiff filed solely concerns the false misbehavior report and resulting keeplock confinement. Indeed, the Complaint specifically alleges that "Plaintiff submitted a grievance against the false misbehavior report." (Compl. ¶ 8.) Additionally, the Grievance Decision from the IGRP also states "title of grievance: keeplocked for no reason" and "[g]rievance complains that he was improperly keeplocked and given a false misbehavior." The IGRC interpreted the grievance to concern only two issues: (1) the false misbehavior report and (2) the unlawful keeplock confinement. As a result, the IGRC denied Plaintiff's grievance as a "non-grievable" issue because, pursuant to 7 NYCRR § 701.5, grievances regarding disciplinary proceedings are not permitted. Had the Grievance contained additional allegations regarding missing certain religious prayers or meals, IGRC would not have rendered a decision that the Grievance was non-grievable. Moreover, there is no indication in Plaintiff's materials that he filed, or even attempted to file, a separate grievance relating to his religious rights. Accordingly, the Court concludes that Plaintiff failed to exhaust his claims regarding deprivation of religious rights

because it is clear from the face of the Complaint, and incorporated documents, that Plaintiff did not grieve those issues.[5]

## II. Excuses to Exhaustion

A prisoner is required to exhaust *available* grievance procedures. *See Ross v. Blake*, 136 S. Ct. 1850, 1852 (2016) ("*Blake*"). It follows then that failure to exhaust is only excused when grievance procedures are *unavailable*. *Id*.[6] In *Blake*, the Supreme Court enumerated three circumstances in which grievance procedures would be unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation [,]" a prisoner's failure to exhaust may be excused. *Id*. at 1860.

Plaintiff appears to assert that the grievance procedure was unavailable to him. The Court disagrees. Plaintiff cannot argue convincingly that the grievance process was opaque or difficult to understand because he in fact filed the Grievance. Plaintiff could have, but apparently chose not to, file a grievance concerning the missed religious services. Furthermore, the "non-grievable" decision rendered by the IGRC was not a "dead end" for Plaintiff with

---

[5] Plaintiff's conclusory statement in the Complaint that he "exhausted his remedies" does not warrant a different conclusion. *Evans v. Cuzback*, No. 14-cv-7887, 2016 WL 554845, at *3 (S.D.N.Y. Feb. 9, 2016); *see also Hernandez* v. Coffey, No. 99-cv-11615, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003).

[6] Prior to the Supreme Court's decision in *Blake*, the Second Circuit had recognized a special circumstances exception to exhaustion. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). However, in *Blake*, the Supreme Court rejected the special circumstances exception, holding that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." 136 S. Ct. at 1857.

respect to his claims concerning deprivation of religious rights because that decision solely concerned the false misbehavior report and keeplock confinement. Finally, the grievance procedures and operations were still active in the facility. Therefore, the Court finds that administrative remedies were available to Plaintiff.

Liberally construing the Complaint and incorporated materials, Plaintiff also appears to allege that Defendant Lee is estopped from raising a non-exhaustion defense because Defendant Lee threatened Plaintiff, and this in turn discouraged Plaintiff from using the grievance process. Plaintiff alleges that Defendant Lee told Plaintiff that the fact that Plaintiff beat his last misbehavior ticket is luck and "Plaintiff's luck may not be as lucky in his next ticket." (Pl.'s Decl. ¶ 2(i).) Defendant Lee also purportedly stated that he "could make sure that if Plaintiff continued down this road in going after his officers, things could very difficult for Plaintiff." (*Id.*) Taking these allegations as true, Defendant Lee's verbal threat may have discouraged Plaintiff from pursuing a grievance relating to missed religious services. *See Amador v. Andrews*, 655 F.3d 89, 103, (2d Cir. 2011); *Hemphill*, 380 F.3d at 688; *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004). Even if the Court were to find that this threat excused Plaintiff from exhausting his claim against Defendant Lee, Plaintiff's claim against Defendant Lee fails because Plaintiff does not assert that Defendant Lee was personally involved in the alleged constitutional violations.

## III. Plaintiff Fails to State a Claim Against Defendant Lee

Plaintiff's claim against Defendant Lee fails because he does not allege that Defendant Lee was personally involved in any alleged violation of his First Amendment rights. To successfully allege Section 1983 liability, a plaintiff must demonstrate "personal involvement" and cannot merely rely upon an individual's position of authority. *Ayers v. Coughlin*, 780 F.2d

205, 210 (2d Cir. 1985) (holding that liability "requires a showing of more than the linkage in the prison chain of command") (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973)). Furthermore, there is no *respondeat superior* or vicarious liability in a Section 1983 action. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Plaintiff's only allegations against Defendant Lee are that the administration under him refused to file Plaintiff's grievance and refused to take responsibility for training officers who filed false misbehavior reports. (Compl. ¶ 8.) This does not rise to the level of personal involvement sufficient to state a § 1983 claim. Accordingly, the claim against Defendant Lee is dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 22 and close the case.

Dated: July 6th, 2016
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge